# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | | |
|---|---|---|
| YOLANDA A. THOMAS, | : | |
| Claimant, | : | |
| v. | : | CASE NO. 4:07-CV-128 (CDL) |
| | : | Social Security Appeal |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's determination, denied Claimant's application for social security disability benefits, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error, and she seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The court's role in reviewing claims brought under the Social

Security Act is a narrow one. The court may not decide facts, reweigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.* The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that he suffers from an impairment that prevents him from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations pursuant to the authority provided by the Social Security Act. 20 C.F.R. § 404.1 et seq.

Under the regulations, the Commissioner determines if a claimant is disabled by a

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). See also *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

2

five-step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUES

I. **Whether the ALJ failed to properly evaluate the Claimant's residual functional capacity?**

II. **Whether the ALJ erred in evaluating Claimant's subjective allegations of pain?**

III. **Whether the ALJ erred in relying on Vocational Expert testimony which conflicted with the DOT?**

## Administrative Proceedings

Claimant filed for disability benefits on March 20, 2003. (T-62). Claimant's application was denied initially and on reconsideration. Claimant timely filed a request for a hearing before an administrative law judge (ALJ) which was ultimately held on March 11, 2005. (T-299-319). Subsequent to the hearing, the ALJ found that the Claimant was not disabled in a decision dated August 18, 2005. (T-16-22). Claimant then requested a review of the ALJ's findings by the Appeals Council and submitted new evidence for review. Thereafter, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T-4-6).

## Statement of Facts and Evidence

Claimant alleges in her disability application that she is disabled due to bad knees. (T-62). After examining the medical records, the ALJ determined that Claimant had obesity, HIV, post total knee replacement and depression, impairments that were severe within the meaning of the Regulations, but not severe enough to meet any of the relevant Listings. (T-19). Thereafter, the ALJ found that Claimant had the residual functional capacity to perform light work with simple, routine tasks in a low-stress environment. (T-20). The ALJ then utilized the testimony of a vocational expert to determine, after finding that she was unable to return to her past relevant work, whether there were jobs existing in significant numbers in the national economy that she could perform. Following his determination that such jobs did exist, the ALJ then found that Claimant was not disabled. (T-20-22).

## DISCUSSION

**I.     Did the ALJ fail to properly evaluate Claimant's residual functional capacity?**

In her first enumeration of error, Claimant contends that the ALJ failed to consider all of her impairments in making his residual functional capacity determination. (R-10, p. 12). Specifically, Claimant argues that the ALJ improperly evaluated the opinion of one of her treating physicians; her right knee impairment; her obesity; her exertional limitations; her mental limitations; and the combined effect of all of her limitations. *Id.*

    A.    **Opinion of Treating Physician**

Claimant first contends that the ALJ erred in discounting the opinion of Dr. Olubowale, who was treating Claimant for her diagnosis of HI. (R-10, p. 12). She argues that the ALJ failed to provide any explanation was to why the ALJ rejected Dr. Olubowale's opinion regarding her physical limitations and ignored the diagnoses of other physicians. *Id.*

It is well settled that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding it. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). A treating physician's report may be discounted when it is not accompanied by objective medical evidence or when it is conclusory. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician. *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991). *See also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

To give a medical opinion controlling weight the ALJ "must find that the treating sources's opinion is 'well supported' by 'medically acceptable' clinical and diagnostic techniques. The adjudicator cannot decide a case in reliance on a medical opinion without

5

some reasonable support for the opinion." S.S.R. 96-2p. Additionally, the ALJ must find that the treating source's opinion is "not inconsistent" with the other "substantial evidence" of record. *Id*.

The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. "Good cause" is found to exist when the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (omitting internal citations).

It is found that the ALJ clearly articulated his reasons for giving less weight to the opinion of Dr. Olubowale as to the Medical Source Statement he completed and that his reasons constitute good cause. The ALJ based the decision on the evidence of record; including the treatment notes of Dr. Olubowale; the treatment notes of Claimant's other treating physicians; as well as the symptoms and limitations as subjectively alleged by the Claimant which, based on the medical evidence, the ALJ found not entirely credible. (T-19-20). Upon review of the entire record, the Commissioner appears to have committed no error in applying the proper legal standard in discounting the opinion of Dr. Olubowale, and substantial evidence supports his decision. As stated above, Dr. Olubowale treated Claimant for HIV. His opinions as to her physical limitations based on the limited treatment he provided is not persuasive. Of particular relevance is Claimant's assertion in her Reply Brief

that "no evidence of Claimant's knee status *post* replacement [is] in the record." (R-14, p. 2). Although that statement is technically correct, it is noted that Dr. Olubowale completed the Medical Source Statement which documented his opinions of Claimant's ability to do "work related physical activities" six days after her knee replacement surgery. (T261-262). Furthermore, Dr. Olubowale's treatment notes do not reflect any of the severity that he alleges in the Medical Source Statement.

It is also noted that An ALJ is not required to give significance to opinions of any medical provider where the opinion relates to issues reserved solely for determination by the Commissioner; this includes any physician's opinion which states that he or she finds the claimant disabled or that he finds that the claimant's impairments meet or equal any relevant Listing. 20 C.F.R. §416.927(e)(1), (2) & (3); SSR 96-5p. Determinations of disability or RFC "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination of disability." 20 C.F.R. 404.1527(e); *see* SSR 96-5p. In his statement, Dr. Olubowale found that Claimant was unable to work. Pursuant to the Regulations, however, the ALJ was not required to accept that determination by Claimant's treating physician. For all of the foregoing reasons, therefore, no error is found in the ALJ's decision to discount the findings of Dr. Olubowale.

### B. Right Knee Impairment

Claimant next contends that the ALJ wrongly stated that Claimant alleged disability beginning June 1, 2002, "due to status post total knee replacement." (R-10, p. 13). Claimant

7

argues that the ALJ erred to the extent that he may have relied on the "erroneous assumption" that Claimant had knee surgery in 2002 and not in 2005, in discounting Dr. Olubowale's opinion, ignoring the surgeon's 2003 diagnosis, and in determining her residual functional capacity. (R-10, p. 13).

A review of Claimant's original application for social security disability benefits establishes that the Claimant herself stated that the illnesses which limited her ability to work were that "both knees keep me from standing too (sic) long and sometimes sitting too (sic) long." (T-62). When asked what date she became unable to work due to her illness, she herself listed June 2002. *Id.* The ALJ was merely reciting those statements in his findings. Later, in the body of his findings, the ALJ specifically noted that Claimant was scheduled for knee replacement surgery on March 2, 2005, and no mention of Claimant having surgery on June 1, 2002, is found anywhere in the decision. Although the ALJ does apparently mistake Claimant's knee scope surgery for her knee replacement surgery in his recitation of her medical records, that error is found to be harmless, as it would not likely have changed the ALJ's ultimate findings. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *see also Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) ("a remand is not essential if it will amount to no more than an empty exercise"). It is found, therefore, that the ALJ could not have erred in reciting Claimant's own statements as to when her disability began. Furthermore, there is no evidence whatsoever that the ALJ relied on June 1, 2002, in making any relevant findings. It follows, then, that any issues Claimant raises from what is ultimately a non-issue are

meritless.

C. **Obesity**

Despite the elimination of Listing 9.09, obesity is still a factor for disability determination according to SSR 02-1p. That regulation added language to the prefaces of musculoskeletal, respiratory and cardiovascular body system listings, "to provide guidance about the potential effects obesity has in causing or contributing to impairments of those body systems." *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, Listing Sections 1.00, 3.00, and 4.00. The regulation also instructs that obesity can be considered at other steps of the sequential evaluation process including the assessment of a residual functional capacity.

The Claimant argues that the ALJ failed to give any consideration to the effect of her obesity on her residual functional capacity. The ALJ's findings reveal that he considered Claimant's obesity, after finding that it was a severe impairment, along with his other impairments, but found that his severe impairments did not meet or equal a Listing found in the Regulations. (R-16-22). Despite Claimant's argument otherwise, the record reflects that the ALJ did consider Claimant's obesity in combination with her other impairments. *Id*.

Furthermore, Claimant failed to meet her burden of showing how her obesity affected her other conditions, so as to meet or equal a listing. Regulation 00-3p states, "We will not make assumptions about the severity of functional effects of obesity combined with other impairments. Obesity in combination with other impairments may or may not increase the severity or functional limitations of other impairments." The burden is on Claimant to present evidence of any claimed impairment and/or any combination of impairments.

9

Therefore, this court finds that Claimant did not present any evidence that her obesity increased the severity of other impairments so that they met or equaled a listing, therefore, there was no error as to this claim.

      **D.**      **Exertional Limitations**

Claimant also contends that the ALJ erred in evaluating her exertional limitations where he failed to make a function-by-function assessment of her residual functional capacity, before determining that she can do light work." (R- 10, p. 14). Thus, the Claimant argues, the ALJ committed reversible error.

The Regulations state that where an ALJ finds that the Claimant's impairments do not meet the relevant Listing, he is required to make a determination as to whether the Claimant still has the residual functional capacity to engage in gainful employment by returning to her former work or performing other work which she would be able to perform taking into consideration her limitational impairments. (20 C.F.R. §§ 404.1545 and 416.945, Social Security Ruling 96-8p). In making his assessment, the ALJ considered all of Claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be considered consistent with the objection medical evidence and other evidence based on the requirements of 20 C.F.R. § 416.929, and Social Security Ruling 96-7p. The ALJ also considered medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations. (20 C.F.R. § 416.927 and Social Security Rulings 96-2p and 96-6p).

Here, the ALJ found that the Claimant retained the residual functional capacity to

perform light work. (R-19). Light work is defined in the regulations as work involving lifting of no more than twenty pounds at a time, with frequent lifting and carrying of objects weighing up to ten pounds. 20 C.F.R. Sections 404.1567(b); 416.967(b). Even though the weight lifted in a job may be very little, a job is also in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. *Id.* To be considered capable of performing a full or wide range of light work, a claimant must have the ability to perform substantially all of these activities. As noted *supra*, the ALJ determined that although Claimant could perform light work, it would have to be work with simple, repetitive tasks in a low stress environment. (T-20).

The ALJ based his finding on the Claimant's testimony, the medical opinions provided by treating physicians as well as the opinions of non-examining consultants. *Id.* Based on his evaluation of the medical evidence as a whole, along with the testimony of the Claimant, the ALJ found that Claimant retained the RFC to perform light work. He based that decision on several factors, none of which were inappropriate, in finding that this Claimant retained the ability to perform some work. Social Security Ruling 96-8p Accordingly, the ALJ applied the appropriate legal standards in determining Claimant's RFC, and his decision is supported by substantial evidence.

### E. Depression

Claimant also contends that the ALJ erred in evaluating her mental impairment. (R-10, p. 15). Specifically, Claimant argues that although the ALJ determined that her

11

depression was severe, he failed to "follow the 'special technique' the regulations mandate for evaluating mental impairments, and subsequently failed to make a mental RFC finding." *Id.*

Claimant argues that the ALJ failed to complete a PRTF (Psychiatric Review Technique Form) in violation of the regulations and the holding in *Moore v. Barnhart*. 405 F.3d 1208 (11th Cir.). *Id.* *Moore* states that "[W]here a Claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, **or** incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Moore*, 405 F.3d at 1214(emphasis added). The court found that an ALJ is required to complete the PRTF or incorporate that analysis of the effect of the claimant's mental impairment on the four functional areas of: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id; See also* 20 C.F.R. § 404.1520a-(c). An ALJ is required to address these four areas of functioning using the "technique" required under 20 C.F.R. 404.1520a.

The PRTF, which contains a series of broad questions aimed at guiding the ALJ's evaluation of the severity of a claimant's mental impairments, is an inquiry directly implicated at steps 2 and 3 of the sequential evaluation process. *See* 20 C.F.R. § 404.1520a. The PRTF is used to assist the ALJ in making a determination as to the severity of the Plaintiff's impairments. 20 C.F.R. § 416.920a(d)(3). It is then up to the ALJ to analyze the Plaintiff's residual functional capacity (RFC) to ultimately determine whether a disability exists. *Id.*; SR 96-8p.

In Claimant's case, although the ALJ did not complete a PRTF, he did note that a PRTF was completed by Dr. John W. Hollender on July 29, 2003. (T-18). He further stated that he had considered the medical opinions and sources of record and, with the exception of Dr. Olubowale's opinions, "afforded [them] such weight as was consistent with the record." (T-20).

After reviewing the medical record along with the ALJ's determinations regarding Claimant's mental impairments, no error is found to have been made. The records from Claimant's physicians, as well as the consultative examiners, fail to establish that she had any more than mild functional limitations resulting from her depression. The court finds that the ALJ provided sufficient information as to the weight he afforded the significant and relevant evidentiary items related to the impairments at issue in this case to allow the court to determine whether his decision was rational and supported by substantial evidence. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *Hudson v. Heckler*, 755 F.2d 781, 785-86 (11th Cir. 1985).

### F. Combined Effect of Impairments

Claimant further alleges that the ALJ failed to properly evaluate the combined effect of all of her limitations on her ability to work. She claims that because the ALJ erred in failing to properly evaluate all of her severe impairments separately, he could not have validly determined how the limitations which resulted from these impairments, in combination with her other impairments, would prevent her from performing work-related activities. (R-10, p. 17).

A review of the record, along with the ALJ's findings, reveals that the ALJ correctly found that Claimant's assertions regarding the limitations resulting from her impairments were not established by the record. As has been stated, the burden is on Claimant to present evidence of any claimed impairment and/or any combination of impairments and the limitations which ensue from said impairments. Herein, Claimant failed to produce medical evidence that indicated that her physical nor her mental impairments caused any limitations that precluded her from doing light work, or that said conditions were not controlled by treatment or medication. Therefore, this court finds that the ALJ evaluated the combined effects of all of her properly determined limitations in finding that she was capable of performing light work.

## II. Did the ALJ err in evaluating the Claimant's subjective allegations of pain?

Claimant next contends that the ALJ erred in making his determination regarding her credibility. (R-10, p. 17). Specifically, she argues that the ALJ's finding does not comply with SSR 96-7p where he failed to consider the entire record, including the side effects of her medication, the objective evidence supporting her pain and the inofrmation provided by the examining physicians. *Id.* at 19.

In evaluating credibility, "[b]ased on a consideration of all of the evidence in the case record, the Regulations state that adjudicator may find all, only some, or none of an individual's allegations to be credible." S.S.R. 96-7p. A limitation cannot be established solely by a claimant's own report. *See* 20 C.F.R. § 416.928(a). The record must contain medical evidence, in the form of observable abnormalities or laboratory findings, that "shows

the existence of a medical impairment(s) . . . which could reasonably be expected to produce" the alleged limitation. *Id.* Claimant contends that the ALJ erred in failing to consider whether, pursuant to the Regulations, she suffered from such an underlying medically determinable impairment. (R-10, p. 18). Specifically, she argues that the fatigue she experiences due to HIV, as well as the pes anserinus bursitis with probable internal derangement of the right knee diagnosed by Dr. Zimmerman, could both produce the allegations of pain as alleged. *Id.*

In his Findings, the ALJ discussed Claimant's medical records and work history with regard to her allegations of the severity, i.e. the intensity, persistence and limiting effects of her pain. (T-20). A review of the record reveals that the ALJ considered Claimant's testimony, medical evidence provided by the Claimant, and her functional limitations to find that Claimant's allegations of pain were not credible, but that he was giving her the benefit of the doubt in assessing her residual functional capacity. *Id.* As noted above, the court may not decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner, but must decide if the Commissioner applied the proper standards in reaching a decision. Here, the ALJ applied the proper standards and supported his credibility assessment with substantial evidence in the record. For that reason, no error is found in the ALJ's evaluation of Claimant's subjective allegations of pain.

**III.     Did the ALJ err in relying on VE testimony which conflicted with the DOT?**

Claimant argues that the ALJ improperly relied on the VE's testimony because it conflicted with the Dictionary of Occupational Titles (DOT) when he found that she could

15

perform work as an information clerk, mail clerk, and photocopier. (R-10, p.20). Additionally, Claimant argues that the ALJ failed to obtain an explanation for the conflict. *Id*.

Claimant first alleges that the ALJ's conclusion that she could perform work as an information clerk (237.367-022) - which the DOT classifies as requiring an SVP[2] of 4 and a GED:R4[3] contradicts his own findings. (R-10, p. 17) For the same reason, Claimant argues that she also would be prevented from working as a photocopier (207.685-014) because it involved a GED:R2 (with an SVP of 2). *Id*. Claimant also argues that because the ALJ found that she would be precluded form "task" work, "assuming that this refers to the ability to perform set tasks within a period of time", she would be unable to perform the mail clerk position which involves a GED:R3 (SVP of 2) and requires a person to sort, open, stamp, examine and readdress mail. *Id.* Claimant contends that as jobs with an R:2 reasoning level require an individual to carry out detailed but uninvolved written or oral instructions, and the ALJ restricted her to only simple routine tasks. Therefore, Claimant contends she would only have the ability to perform jobs classified as GED:R1, which require the ability to carry out only simple one-to-two step instructions. *Id*.

---

[2]SVP is defined in the DOT as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. *See* Appendix C, *Dictionary of Occupational Titles, Revised*, US Dept. Of Labor (4th Ed. 1991).

[3] GED (General Education Development) are those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. *Id.*

Social Security Ruling SSR 00-4p states that unskilled work corresponds to an SVP of 1-2. Claimant further argues that by limiting Claimant to simple routine tasks, the ALJ limited her to performing only unskilled work, which is work that has an SVP of 1 or 2. (R-10, p. 20). The Regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a)(2007), 416.968(a)(2007). Therefore, a limitation to simple tasks is already presumed within the unskilled limitation, and is not a limitation above and beyond that classification. *See Vuxta v. Commissioner of Social Security*, 194 Fed. Appx. 874, 878 (11th Cir. 2006)[4].

As to her claim that the ALJ failed to obtain an explanation for the conflict between the VE's testimony and the DOT, Claimant refers the court to a United States District Court case from the Middle District of Florida wherein she cites a portion of the decision which held that:

> [S]everal courts have found that the GED's reasoning level does, in fact, pertain to the work requirements of a job and thus, is relevant where an ALJ limits a plaintiff to the performance of simple and/or repetitive tasks. Moreover, the Court notes that it has reviewed several cases in which courts have acknowledged that reasoning levels are a component of GED, but, nevertheless, ordered remand, pursuant to SSR 00-4p, based upon the ALJ's failure to elicit a reasonable explanation from a VE regarding an apparent conflict between the VE's testimony that a plaintiff, who was limited to performing simple and repetitive tasks, could perform a job that the DOT classified as

---

[4] Eleventh Circuit Rule 36-2 allows an unpublished case to be cited as persuasive authority. (CTA11 RULE 36-2).

either requiring a reasoning level of two or three. Defendant has neither acknowledged these cases nor cited any case law in support of his argument that the GED's reasoning level merely relates to the educational level needed to perform a job and, thus, has no relation to the work demands of a job.

*Leonard v. Astrue*, 487 F. Supp. 2d 1333, 1342-1343 (M.D. Fla. 2007) (internal citations omitted). (R-14, p. 9). The Eleventh Circuit, however, has held that

> "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" The Commissioner correctly responds that agency rulings "do[ ] not bind this [C]ourt." " 'Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same. A ruling may be superceded, modified, or revoked by later legislation, regulations, court decisions or rulings.'" Even assuming that an inconsistency existed between the testimony of the vocational expert and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the vocational expert. Our precedent establishes that the testimony of a vocational expert "trumps" an inconsistent provision of the DOT in this Circuit. *See Jones,* 190 F.3d at 1229-30.

*Miller v. Commissioner of Social Security*, 246 Fed. Appx. 660, 662 (11th Cir. 2007).

Furthermore, Social Security Ruling 00-4p states, in relevant part, as follows:

> Occupational Evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an **apparent unresolved conflict** between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. (Emphasis added).

18

Even though there was not an **apparent** conflict, the ALJ in this case did inquire if the VE's testimony deviated from the DOT. (T-318). The VE responded that it did not *Id*. Because there was no "apparent conflict" between the VE's testimony and the DOT, the ALJ was not required under SSR 00-4p to elicit a "reasonable explanation" from the VE as to the positions containing GED levels above R1 or positions with an SVP over 2. Therefore, no error is found in the ALJ's reliance on the testimony of the VE and it is found that the ALJ did not improperly determine that Claimant was capable of performing work as a mail clerk, an information clerk or a photocopier. (T-20-22).

## **CONCLUSION**

In reviewing the record, no evidence of error is found to substantiate the Claimant's contentions that the ALJ committed reversible error in this case. This Court finds that the ALJ properly evaluated the evidence of record and finds further that the decision of the ALJ is supported by substantial evidence. Moreover, the record fails to reveal evidence of the ALJ acting outside of his judicial role in determining the extent of the Claimant's disability.

**WHEREFORE**, it is the recommendation to the United States District Judge that the decision of the defendant Commissioner of Social Security be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within ten (10) days after being served a copy of this recommendation.

**SO RECOMMENDED**, this the 17th Day of September, 2008.

S/ G. MALLON FAIRCLOTH
                              UNITED STATES MAGISTRATE JUDGE

eSw